```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
GUILLERMO JULIO LOPEZ,              :
                                    :
         Petitioner,                :    05 Civ. 4520 (JFK)
                                    :    03 Cr. 35 (JFK)
                                    :
     -against-                      :    OPINION AND ORDER
                                    :
UNITED STATES OF AMERICA,           :
                                    :
         Respondent.                :
-----------------------------------X
```

**APPEARANCES:**

    Petitioner, <u>Pro Se</u>:

        GUILLERMO JULIO LOPEZ
        Reg. No. 09085-052
        P.O. Box 26040
        Beaumont, Texas 77720

    For the Respondent:

        MICHAEL J. GARCIA
        United States Attorney for the
        Southern District of New York
        One Saint Andrew's Plaza
        New York, New York 10007
        Of Counsel:  Eric Snyder
                      Assistant United States Attorney

**JOHN F. KEENAN, United States District Judge**

**JOHN F. KEENAN, United States District Judge:**

Preliminary Statement

Before the Court is the pro se motion of Petitioner Guillermo Julio Lopez ("Lopez") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("§ 2255"). For the reasons discussed below, Petitioner's motion is denied.

Background

Lopez, a Dominican Republic national, first came to the United States in 1969. On July 10, 1982, Lopez was convicted in New York State Supreme Court, New York County, of criminal sale of a controlled substance in the fifth degree. On August 23, 1982, Lopez was sentenced to two to four years of imprisonment. Lopez was paroled to the Immigration and Naturalization Service on October 24, 1986, and deported on November 4, 1986. In or about December 2001, Lopez re-entered the country.

On November 1, 2002, officers of the New York City Police Department arrested Lopez in the Bronx, New York, and charged him with criminal possession of a controlled substance in the seventh degree. After determining that Lopez had previously been deported from the United States following a felony conviction and had not been granted permission by the Attorney General to re-enter, agents of the Bureau of Immigration and Customs Enforcement arrested Lopez.

On January 9, 2003, Lopez was charged with entering the United States without permission after having been deported subsequent to a conviction for the commission of an aggravated felony, a violation of 8 U.S.C. § 1326(a) and (b)(2). Lopez pled guilty on May 20, 2003 to the sole count in the indictment. Before accepting Lopez's plea, the Court informed Lopez that § 1326(a) and (b)(2) carried a maximum sentence of twenty years imprisonment, and that the Court would consider the Sentencing Guidelines when determining his sentence. Lopez indicated that he understood, and acknowledged that he had reviewed the Pimentel letter[1] provided by the government. (Plea Tr. at 10)

On September 19, 2003, the Probation Department issued Lopez's Pre-Sentence Investigation Report ("PSR"). The PSR set forth Lopez's base offense level at 24; his adjusted offense level, after reductions for acceptance of responsibility, at 21; and his criminal history category at VI. The corresponding Sentencing Guidelines ("U.S.S.G.") range was 77-96 months of imprisonment. The Probation Department recommended a sentence of 96 months, at the top of the Guidelines range.

On September 26, 2003, Lopez's counsel, Isabelle A. Kirshner, Esq., filed an application for a downward departure

---

[1] "[T]he Government routinely informs defendants, in response to [the Second Circuit's] invitation in United States v. Pimentel, 932 F.2d 1029, 1034 (2d Cir. 1991), as to the likely range of sentences that their pleas will authorize under the Guidelines." United States v. Cuero-Flores, 276 F.3d 113, 115 n.1 (2d Cir. 2002).

under U.S.S.G. § 5K2.0 based on extraordinary family circumstances. Lopez's application claimed Lopez re-entered the United States to console his son, who had lost his wife, child, and mother-in-law in the November 12, 2001 American Airlines Flight 587 Belle Harbor airplane crash.

On October 15, 2003, the Court denied Lopez's application for a downward departure, acknowledging the terrible circumstances under which Lopez entered the United States, but did sentence him to 77 months of imprisonment, the bottom of the Guidelines range.

The Court adopted the Probation Department's determination that U.S.S.G. § 2L1.2 applied. Section 2L1.2 sets a § 1326 defendant's base offense level at 8. See U.S.S.G. § 2L1.2(a) (2002). Lopez's base offense level of 8 was increased 16 levels to 24, pursuant to § 2L1.2(b)(1)(A), because Lopez had been convicted of drug trafficking, an aggravated felony, in 1982 prior to his 2001 deportation.

Lopez filed a timely notice of appeal. Subsequently, Ms. Kirshner filed an Anders v. California, 386 U.S. 738 (1967), brief. Under Anders, if counsel determines that a client's requested appeal is frivolous, after a conscientious examination of the appeal she must file a brief "referring to anything in the record that might arguably support the appeal." Id. at 744. Ms. Kirshner's brief stated her opinion that no non-frivolous

matters existed for the Court of Appeals to determine. On April 27, 2004, the United States Court of Appeals for the Second Circuit affirmed Lopez's conviction.

Lopez timely filed the instant motion, claiming (1) that the District Court erred in considering his 1982 conviction an aggravated felony while calculating his sentence under U.S.S.G. § 2L1.2(b), and (2) that his trial counsel was ineffective.

## Discussion

### Calculation of Lopez's Sentence

8 U.S.C. § 1326 defines illegal re-entry as

> [A]ny alien who . . . enters, attempts to enter, or is at any time found in, the United States, unless . . . the Attorney General has expressly consented to such alien's reapplying for admission . . . [and] whose removal was subsequent to a conviction for commission of an aggravated felony, . . . shall be fined under [Title 18, United States Code], imprisoned not more than 20 years, or both.

8 U.S.C. § 1326 (2000).

The term "aggravated felony," as used in § 1326, is defined in 8 U.S.C. § 1101(a)(43). Section 1101(a)(43) includes in its definition of aggravated felony "illicit trafficking in a controlled substance . . . including a drug trafficking crime." 8 U.S.C. § 1101(a)(43)(B) (2000).

Lopez argues that his 1982 conviction cannot be counted as a prior "aggravated felony" under 8 U.S.C. § 1326, because the term was not expanded to include drug trafficking until Congress

4

amended 8 U.S.C. § 1101(a)(43) in 1990, 8 years after the conviction in question.  Under the Guidelines, a defendant's base offense level is increased 16 levels for a

> [C]onviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense committed for profit.

U.S.S.G. § 2L1.2(b)(1)(A) (2002).  A defendant's base offense level is increased 4 levels for "a conviction for any other felony" other than an aggravated felony.  See id. § 2L1.2(b)(1)(D).  Lopez argues that his Guidelines offense level should not have been increased by 16 levels, as required for a predeportation aggravated felony, but only by 4 levels because his 1982 conviction was not an aggravated felony at the time.

On September 30, 1996, however, 8 U.S.C. § 1101(a)(43) was amended by § 321 of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which states the temporal reach of the new definition of "aggravated felony" in § 1101(a)(43).  § 321 states:

> EFFECTIVE DATE OF DEFINITION.—-Section 101(a)(43)(8 U.S.C. 1101(a)(43)) is amended by adding at the end of the following new sentence: "Notwithstanding any other provision or law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph."

5

IIRIRA, Pub.L. No. 104-208, § 321, 110 Stat. 3009-628 (codified as amended at 8 U.S.C. § 1101(a)(43)(2000)). Thus, "Congress made its intent clear that a § 1326 defendant's predeportation felony is to be considered an aggravated felony if it comes within the definition of that term as amended, <u>regardless of when that felony conviction was entered</u>." <u>United States v. Luna-Reynoso</u>, 258 F.3d 111, 116 (2d Cir. 2001)(emphasis added); <u>see also</u> <u>Sousa v. I.N.S.</u>, 226 F.3d 28, 33 (1st Cir. 2000)("IIRIRA's more recent definition adopted in 1996 . . . expressly rejects temporal limitations and applies to all actions taken after its enactment.").

Lopez's reliance on <u>United States v. Gomez-Rodriguez</u>, 96 F.3d 1262, 1263-65 (9th Cir. 1996) and <u>United States v. Fuentes-Barahona</u>, 111 F.3d 651, 653 (9th Cir. 1997) to support his contention that his 1982 drug trafficking conviction does not constitute an aggravated felony, is misplaced. In 1990, Congress expanded the definition of "aggravated felony" as part of the Immigration and Nationality Act of 1990 ("INA Act") and included an effective date provision. <u>Gomez-Rodriguez</u> and <u>Fuentes-Barahona</u> held that convictions <u>prior</u> to the INA Act's effective date could not fall within the expanded scope of the term "aggravated felony." See <u>Fuentes-Barahona</u>, 111 F.3d at 653; <u>Gomez-Rodriguez</u>, 96 F.3d at 1263-65. However, because <u>Gomez-</u>

6

Rodriguez and Fuentes-Barahona addressed illegal re-entry convictions prior to IIRIRA, they are inapposite.

Here, Lopez's illegal re-entry occurred well after the passage of IIRIRA, which amended 8 U.S.C. § 1101(a)(43) and rejected all temporal limitations to the application of the term "aggravated felony." Thus, Lopez's 1982 conviction was properly considered an aggravated felony.

Lopez also argues that his 1982 drug trafficking conviction does not count as an aggravated felony because it occurred more than 15 years prior to his current illegal re-entry offense. Specifically, Lopez relies on U.S.S.G. § 4A1.2(e)(1), which does not count convictions falling outside a 15-year period preceding the defendant's current offense toward the calculation of the defendant's criminal history category.

However, Section 4A1.2(e)(1), found in Chapter 4 of the Sentencing Guidelines, sets forth the criminal history category for defendants who had been previously sentenced. Section 2L1.2, on the other hand, found in Chapter 2, calculates the defendant's base offense level. The defendant's criminal history category and base offense level clearly are two separate determinations that must be made when calculating a sentence range. The Guidelines commentary notes that an aggravated felony "has the meaning given that term in 8 U.S.C. § 1101(a)(43), without regard to the date of conviction of the

7

aggravated felony." Id. § 2L1.2 Application Note 2 (emphasis added).

Furthermore, it is well-settled in the Second Circuit that the two chapters are independent. In United States v. Hidalgo-Macias, 300 F.3d 281, 286 (2d Cir. 2002), the Second Circuit noted that the "[o]ffense level determination is intended to serve a different purpose than criminal history calculation; the two are analyzed independently." In determining the offense level under § 2L1.2 for an illegal re-entry following an aggravated felony conviction, "[t]here is no authorization or justification for consulting the criminal history rules in Chapter Four for an explanation of the term [aggravated felony]." Id.; see also United States v. Huerta-Moran, 352 F.3d 766, 769 n.5 (2d Cir. 2003)(noting that § 4A1.1 should not be used as an interpretive guide for § 2L1.2). The Court correctly did not consider Lopez's 1982 conviction in calculating Lopez's criminal history category, and correctly considered his 1982 conviction when upwardly adjusting his base offense level 16 levels.

Claim of Ineffective Assistance of Counsel

Lopez claims he did not receive effective assistance of counsel because his attorney failed to object to the 16-level enhancement of his base offense level under § 2L1.2(b). To establish a claim for ineffective assistance of counsel, Lopez

8

must show (1) "that counsel's performance fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984); see also United States v. Perez, 129 F.3d 255, 261 (2d Cir. 1997).

Lopez has not established a claim of ineffective assistance of counsel under the Strickland test, as Ms. Kirshner's representation did not fall below an objective standard of reasonableness. Rompilla v. Beard, 545 U.S. 374 (2005) is of no help to Petitioner either. Lopez claims he was denied effective representation because Ms. Kirshner failed to challenge the 16-level enhancement of his base offense level. He claims she should have objected to the enhancement based on the time limits in § 4A1.2. As already discussed, § 4A1.2 does not apply to base offense levels; instead, it determines the criminal history category. Her failure to raise a legally insufficient claim does not constitute ineffective assistance. Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001)("[F]ailure to include a meritless argument does not fall outside the 'wide range of professionally competent assistance' to which Petitioner was entitled." (quoting Strickland, 466 U.S. at 690)).

Furthermore, assuming arguendo that counsel's performance fell below an objective standard of reasonableness, Lopez has

9

not shown that the outcome of his sentencing would have been different but for Ms. Kirshner's failure to challenge the enhancement of his sentence. The law in this circuit clearly establishes that the calculation of a defendant's offense level under § 2L1.2(b) for a conviction prior to illegal re-entry is made without any time limits. Lopez cannot show any way in which, had he been able to challenge the sentence enhancement, "the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. Consequently, his claim of ineffective assistance of counsel is meritless.

It is worth noting that throughout Lopez's case, counsel vigorously defended her client's interests every step of the way. Counsel filed a five-page downward departure application on Lopez's behalf, supported by a newspaper clipping listing the passengers of the Belle Harbor crash, a letter from Lopez's son describing the emotional turmoil he had suffered and his father's support and dedication, and a letter from Lopez's employer describing Lopez as "hard-working and reliable." Although the Court ultimately denied Lopez's request, the Court complimented Ms. Kirshner's "imaginative" application for a downward departure on the grounds of extraordinary family circumstances. Counsel also contested the Probation Department's recommendation that the Court sentence Lopez at the very top of the Guidelines range, arguing that the circumstances

motivating Lopez's return to the United States warranted a sentence at the bottom of the Guidelines range. The Court, having heard counsel's argument, sentenced Lopez at the very bottom of the Guidelines range.

## Conclusion

For the foregoing reasons, Lopez's petition to vacate his sentence is denied. As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253; see Perez, 129 F.3d at 259-60; Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 445 (1962). This case is closed and the Court directs the clerk of the court to remove this case from the Court's active docket.

**SO ORDERED.**

**Dated: New York, New York
June 26, 2006**

John F. Keenan
**United States District Judge**